UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY RYAN AGNO,

     Plaintiff,

     v.

PHH MORTGAGE CORPORATION,

     Defendant.

No.  2:26-cv-0011 DAD AC PS

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding in this matter pro se; pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  This case was removed from San Joaquin County Superior Court on January 2, 2026.  ECF No. 1.  Plaintiff filed a First Amended Complaint on January 21, 2026.  ECF No. 13.  Defendant filed a motion to dismiss the case.  ECF No. 17.  Plaintiff opposed the motion (ECF No. 20) and defendant replied (ECF No. 21).  Oral argument was held via Zoom on March 18, 2026.  For the reasons set forth below the undersigned recommends defendants' motion to dismiss be GRANTED and that plaintiff be permitted to amend.

## I. Background

### A.    The Operative First Amended Complaint

Plaintiff is an individual residing in in San Joaquin County, California and is the borrower on a VA-guaranteed mortgage loan secured by a property ("subject property") which he occupies

1

as his primary residence.  ECF No. 13 at 4.  Defendant PHH Mortgage Corporation ("PHH") is a mortgage servicer which, at all relevant times, serviced plaintiff's loan and was responsible for escrow accounting, loss mitigation review, and foreclosure-related actions.  Id.  Before plaintiff's loan was transferred to PHH, the loan was with PennyMac Loan Services, LLC ("PennyMac").  Id. at 2.  Plaintiff worked with PennyMac and a VA-assigned loan technician to complete a VASP modification that would re-amortize plaintiff's loan and result in a principal-and-interest payment of $2,704.11 per month, plus a reasonable escrow for taxes and insurance.  Id.  As part of the VASP modification, arrears and escrow-related deficits were capitalized and added to the back end of the loan balance.  Id.

On or about June 17, 2025, plaintiff's loan was transferred to PHH for servicing.  Id.  PHH's first billing statement following the transfer demanded a monthly payment of $4,127.16, consisting of principal and interest in the amount of $2,704.11 and an escrow payment of $1,432.05.  Id.  PHH reported the loan's principal balance as $818,983.41 with an interest rate of 2.5% and an escrow account balance of $5,244.66.  Id.  Plaintiff contends the dramatic increase in his monthly payment was due to escrow changes, including an escrow shortage that had already been capitalized under the VASP modification.  Id.

Plaintiff promptly contacted PHH seeking clarification and correction of the escrow calculations and resulting increase in payment.  Id. at 3.  PHH failed to provide a clear accounting.  Id.  After the servicing transfer, plaintiff obtained a service-connected disabled-veteran property-tax exemption through the San Joaquin County Assessor, reducing the property tax component of escrow.  Id.  Although PHH acknowledged the exemption in its escrow analysis, PHH failed to timely or accurately adjust plaintiff's escrow payment to reflect the reduced tax obligation and continued to demand payments on inflated escrow figures.  Id.

During this same period, PHH issued repeated written notices acknowledging receipt of plaintiff's loss-mitigation documents and stating that applications were under review, only to cancel those applications without identifying specific missing documents or providing a reasonable opportunity to cure, while simultaneously pursuing foreclosure-related actions.  Id.  Plaintiff filed suit in San Joaquin County superior court to enforce his rights under federal and

state law.  Id.  The case was subsequently removed to federal court.

Plaintiff asserts four causes of action: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), Regulation X; (2) violation of California Homeowner Bill of Rights; (3) violation of California Unfair Competition Law; and (4) Declaratory and Injunctive Relief. ECF No. 13 at 6.

B.  Motion to Dismiss

Defendant moves to dismiss the First Amended Complaint, arguing that plaintiff's federal cause of action under the Real Estate Settlement Procedures Act (12 U.S.C. § 2605), and the corresponding regulations on loss mitigation procedures for federally related mortgage loans, does not state a claim for relief because plaintiff never made a complete and successful application to modify the repayment terms of his loan, and accordingly there was no "dual tracking" related to the initiation of foreclosure proceedings.  ECF No. 17-1 at 4-5.  Defendant asks the court to decline jurisdiction over plaintiff's remaining state claims.  Id. at 7.  Defendant asks the court to take judicial notice of several documents in evaluating the motion to dismiss. ECF No. 18.

## II.  Analysis

A.  Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35

3

(3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice.  See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).  The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  A pro se litigant is entitled to notice with respect to deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  Judicial Notice

"A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the

4

trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

A "court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668,689 (9th Cir. Cal. 2001). Courts routinely take judicial notice of recorded instruments related to a nonjudicial foreclosure including deeds of trust, assignments, substitutions of trustee, notices of default, notices of trustee's sale, and trustee's deed upon sale "as they are matters of public record whose accuracy cannot be questioned." Castaneda v. Saxon Mortg. Services, Inc., 687 F. Supp. 2d 1191, 1196 (E.D. Cal. 2009). Each of the five documents submitted by defendants are judicially noticeable public records. Accordingly, the court takes judicial notice of the following exhibits submitted by defendant at ECF No. 18: (1) Grant Deed (Randy Agno), #2020-030296, 03-09-20; (2) Interspousal Transfer Deed (Randy Agno), #2020-030297, 03-09-20; (3) VA Deed of Trust, #2022-042741, 04-01-22; (4) Assignment of Deed of Trust (MERS to PennyMac), #2024-003901, 01-16-24; and (5) Assignment of Deed of Trust (PennyMac to VA), #2025-010731, 02-11-25.

C. The Complaint Fails to State a RESPA Claim

Plaintiff's cause of action under RESPA alleges two distinct violations of the statute and its implementing regulations: (1) that PHH improperly initiated foreclosure proceedings while plaintiff's loan modification application was under review (the "dual tracking" claim), and (2) that PHH failed to respond to or correct alleged errors in plaintiff's escrow account. ECF No. 13 at 5-6.[1] The court addresses these matters in turn.

1. Dual Tracking

Both state law and RESPA protect homeowners from a practice called "dual tracking," which prohibits a mortgage servicer from making "the first notice or filing required to commence or initiate the foreclosure process under applicable law" where a homeowner has submitted a "complete" application for mortgage assistance. Cal. Civ. Code § 2923.6(c); 12 C.F.R. § 1024.41(c)(3)(i)(D)(1). Defendant argues that plaintiff's dual tracking claim fails for two

---

[1] Plaintiff confirmed the court's understanding of his claim at hearing on the motion.

5

independent reasons: (1) plaintiff never submitted a "complete" application for mortgage assistance, and (2) defendant did not initiate foreclosure proceedings.

On the first issue, plaintiff alleges that his application was complete at the relevant time and contends that defendant's argument to the contrary reflects a factual dispute regarding completeness and not grounds for dismissal.  The borrower's belief in the completeness of an application is not enough to state a claim, however.  A "complete" application means that the servicer "has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options." 12 C.F.R. § 1024.41(b)(1).  The regulation requires the servicer to review the application "[p]romptly upon receipt" to determine whether it is complete (12 C.F.R. § 1024.41(b)(2)(i)(A)), to send the borrower written notice acknowledging receipt of the application, and if it is incomplete, to state the additional documents needed and a deadline to receive them.  12 C.F.R. § 1024.41(b)(2)(i)(B).  Thus, it is the servicer who determines whether the application is complete, not the borrower.  The complaint does not allege that plaintiff ever received notice from PHH that his application was complete.

On the second issue, the prohibition of dual-tracking is violated only where the lender has issued "the first notice or filing required to commence or initiate the foreclosure process under applicable law." 12 C.F.R. § 1024.41(c)(3)(i)(D)(1).  The First Amended Complaint alleges that PHH initiated unspecified "foreclosure-related actions" while plaintiff's loss-mitigation applications were pending. ECF No. 13 at 3, 5.  In opposition to the motion to dismiss and at the hearing, plaintiff explained this allegation is based on his receipt of a pre-foreclosure demand notice.  See ECF No. 19 at 7; see also ECF No. 1 at 183-184 (exhibit to initial complaint) (letter dated October 20, 2025, notifying plaintiff that account has been referred to attorney to initiate foreclosure proceedings and advising of steps that can be taken to avoid foreclosure).  Plaintiff contends that issuance of this notice, and referral of the account to a lawyer, violated RESPA given the pendency of plaintiff's application for mortgage assistance.

Plaintiff's theory fails as a matter of law, because a demand notice does not "initiate the foreclosure process," it simply signals that the formal process may begin in the near future. See, e.g., Calderon v. Wolf Firm, No. 8:16-cv-1266-JL-SKE-SX, 2017 WL 253969, at *3 (C.D. Cal.

Jan. 18, 2017) (demand letter does not initiate foreclosure proceedings.)  The foreclosure process is initiated when a notice of default is recorded at the county recorder's office.  See Cal. Civ. Code § 2924(a)(1).  Plaintiff acknowledged at hearing on the motion that no notice of default was ever recorded.  The notice on which plaintiff relies may have reflected an intent to initiate foreclosure, but it did not have the legal effect of commencing formal foreclosure proceedings.  Because plaintiff has not alleged (and cannot allege) that defendant commenced or initiated the foreclosure process under California law, he cannot maintain a dual-tracking claim under RESPA.

### 2.  Failure to Correct Escrow Errors

Defendant argues that plaintiff fails to state a RESPA claim for failure to correct escrow account errors because plaintiff never sent proper Qualified Written Requests.  Defendant argues that any request to correct escrow errors must have been sent by letter to the exclusive address designated by PHH for the receipt and processing of a Qualified Written Request or Notice of Error.  12 C.F.R. § 1024.35(c) ("servicer may…establish an address that a borrower must use to submit a notice of error…"); 12 C.F.R. § 1024.36(b) ("servicer may, by written notice provided to the borrower, establish an address that a borrower must use to request information…)".  Absent allegations that this requirement was satisfied, defendant contends that plaintiff has failed to state a claim.

Defendant is correct that plaintiff does not allege compliance with the cited mailing requirement.  Instead, plaintiff argues that PHH clearly received his communications because, as PHH acknowledges, "PHH reviewed the applications and determined that additional documents were needed." ECF No. 17-1 at 6.  It is not clear from the First Amended Complaint whether plaintiff can allege that he complied with RESPA's technical requirement that he submit his requests to the correct address.  At the hearing, plaintiff indicated he may potentially be able to state additional facts addressing the facial deficiencies of this claim, including by detailing the communications he had with defendant's agents regarding his written requests and notifications of error, and defendant's mishandling of the issues raised.  In the absence of such allegations, and because the issue is inadequately briefed, the undersigned expresses no opinion on the question whether the correctness of the mailing address trumps defendant's actual receipt of and responses

7

to plaintiff's complaints as a matter of law.

### 3. State Law Claims

Defendant's motion to dismiss substantively challenges the federal claim only. With respect to plaintiff's state law claims, defendant argues only that the court should decline supplemental jurisdiction if the RESPA claim is dismissed. Defendant does not address the sufficiency of the state claims, or the possibility of remanding those claims to state court in the event the federal claim is dismissed. Because the undersigned recommends that plaintiff be given leave to amend his RESPA claim as to the escrow errors, the court does not address the state law claims here except to note that plaintiff may re-allege them in an amended complaint.

## III.   Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

To the extent plaintiff's RESPA claim is predicated on alleged dual-tracking, it cannot be cured by amendment. Even if plaintiff had submitted a "complete application" for mortgage assistance, defendant's subsequent communication of its intention to foreclose did not initiate foreclosure proceedings under California law. Because plaintiff has acknowledged that defendant never recorded a notice of default with the San Joaquin County Recorder's Office, the dual-tracking claim fails as a matter of law and cannot be cured by amendment. Accordingly, this aspect of the RESPA claim should be dismissed with prejudice.

Leave to amend is appropriate, however, on the RESPA claim as predicated on PHH's alleged escrow errors. The court cannot exclude the possibility that additional facts regarding plaintiff's submission of qualified written requests, and the history of defendant's responses to these requests, could cure the pleading deficiencies identified here. Accordingly, leave to amend should be granted as to this issue.

If the district judge adopts this recommendation and plaintiff chooses to file a Second

8

Amended Complaint, the allegations should be set forth in sequentially numbered paragraphs, with each paragraph number being one greater than the one before, each paragraph having its own number, and no paragraph number being repeated anywhere in the complaint. Each paragraph should be limited "to a single set of circumstances" where possible. Rule 10(b).

The amended complaint must not force the court and the defendants to guess what is being alleged against whom. McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal of a complaint where the district court was "literally guessing as to what facts support the legal claims being asserted against certain defendants"). The amended complaint must not require the court to spend its time "preparing the 'short and plain statement' which Rule 8 obligated plaintiffs to submit." Id. at 1180. Importantly, the amended complaint must not refer to a prior pleading in order to make plaintiff's amended complaint complete. An amended complaint must be complete without reference to any prior pleading. Local Rule 220. This is because, as a rule, an amended complaint supersedes the original complaint. See Pacific Bell Tel. Co. v. Linkline Communications, Inc., 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice & Procedure § 1476, pp. 556 57 (2d ed. 1990)). Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Finally, the court notes that if plaintiff determines that he cannot successfully allege a RESPA claim on amendment, he has the option of voluntarily dismissing the federal claim and asking that the court remand this case to state court.

### IV.    Pro Se Plaintiff's Summary

It is recommended that your RESPA claim be dismissed, because the facts you allege are insufficient to state a claim for relief. However, it is also recommended that you be given leave to file a Second Amended Complaint. If the district judge agrees, the Second Amended Complaint may include your state law claims and your RESPA claim based on defendant's failure to respond to your qualified written requests regarding escrow errors. It is recommended that your dual tracking claim be dismissed without leave to amend, because there is no dual-tracking

violation unless the defendant has initiated formal foreclosure proceedings by having a notice of default recorded with the county.  If you disagree with this recommendation, you may file objections within 21 days.  The district judge will make the final decision.

### V.  Conclusion

Accordingly, the undersigned recommends as follows:

1. That the motion to dismiss at ECF No. 17 be GRANTED IN PART; and

2. That plaintiff's Claim One (RESPA) be DISMISSED with partial leave to amend as specified above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: April 2, 2026

_____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE